**LANDRY'S SEAFOOD HOUSE– ADDISON, INC. and Landry's Restaurants, Inc., Appellants**

v.

**Daryl N. SNADON, Appellee.**

**No. 05–05–01577–CV.**

Court of Appeals of Texas, Dallas.

July 13, 2007.

Rehearing Overruled Oct. 1, 2007.

Richard A. Sheehy, Sheehy, Serpe & Ware, P.C., Houston, James W. Karel, Karel & Associates, P.C., Dallas, TX, for Appellant.

Alvin Homer Badger, Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Daryl N. Snadon sued Landry's Seafood House–Addison, Inc. and Landry's Restaurants, Inc. (Landry's) for amounts due under a commercial lease and a guarantee agreement. A jury found in Snadon's favor, and the trial court entered a final judgment on the verdict. Landry's appeals, bringing four issues: (1) Snadon did not prove he was entitled to recover under the lease; (2) there was legally and factually insufficient evidence to support the award of damages; (3) the trial court erred in denying Landry's motion for new trial, or in the alternative, for a remittitur because the damages were excessive; (4) this case should be reversed and remanded because a portion of the reporter's record is missing due to no fault of Landry's. For the reasons that follow, we resolve Landry's issues against it and affirm the trial court's final judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The premises at issue here are located on Belt Line Road in Addison. The record shows that Snadon leased the premises to a restaurant in 1986. In 1987, Snadon assigned his interest in the premises and rights under the lease to Lee Snadon. In 1993, the lease for the premises was assigned to Landry's Seafood House–Addison, Inc. The assignment and assumption agreement provided that the lease would expire in September 2008. Landry's Restaurants, Inc. guaranteed payment and performance under the lease.

In 1994, Lee Snadon executed a general warranty deed conveying the premises to Daryl Snadon as trustee of a management trust. In 1995, Snadon, as trustee, conveyed the premises to himself, individually, under a general warranty deed.

In January 2003, the restaurant closed, vacated the premises, and stopped paying rent and other amounts due under the lease. Landry's contacted a realtor to find a subtenant. In April 2003, Snadon took possession of the premises and also marketed the site to prospective tenants. There were two lease proposals, and Snadon accepted one of them, eventually leasing the premises to Mark Steinmann in November 2003.

Snadon sued Landry's, asserting it was in default of its contractual obligations under the lease. Snadon presented evidence of damages. The jury found that Landry's–Addison failed to comply with the terms of the lease and that Landry's Restaurants, Inc. failed to comply with the terms of the guarantee agreement. The jury awarded $611,868.63 in damages for rent, contractual interest, taxes and insurance, maintenance, utilities, and leasing costs. The trial court granted Snadon's motion for leave to amend his petition post-verdict. Landry's moved for judgment notwithstanding the verdict and for new trial, or in the alternative, to modify the judgment, or in the further alternative for a remittitur. The trial court overruled Landry's motions. The final judgment awarded the damages against Landry's jointly and severally in the total amount of $654,251.12, which represented attorney's fees and rent and other charges due under the lease incurred by Snadon through August 2005. In addition, the trial court awarded post-judgment interest and attorney's fees on appeal. This appeal followed.

## ENTITLEMENT TO RECOVERY UNDER THE LEASE

▮ In its first issue, Landry's contends that it is entitled to judgment as a matter of law because Snadon failed to prove he was entitled to recover rents and other charges under the lease agreement.

Landry's argues that, because Lee Snadon is listed as the landlord on the 1993 assignment and assumption agreement by which Landry's was assigned the lease, Snadon had the burden to show he had recovered the lease rights, but he failed to make that showing. At trial, Snadon relied on the 1994 general warranty deed from Lee Snadon to Snadon as trustee and the 1995 general warranty deed from Snadon as trustee to Snadon individually. The 1994 deed provides that it is "subject to the title exceptions" set forth in an accompanying exhibit. The exhibit lists six documents—a deed of trust, three easements, a mineral estate, and the 1986 lease and assignments not including to Landry's—and the recordation data for each document. In addition, there is no assignment and assumption document returning rights in the lease from Lee Snadon to Snadon in 1994 as there was when Snadon transferred his interest in the real property to Lee Sandon in 1987. In summary, Landry's argues these documents do not show a proper assignment of the lease from Lee Snadon to Snadon.

Snadon's original petition alleged that he was the "current Landlord" of the lease agreement with Landry's. Landry's argues that Lee Snadon, not Daryl Snadon, was the proper plaintiff. Landry's was bound to file a verified denial if he was asserting that Snadon was not the proper party; barring such a denial, the matter was deemed admitted. TEX.R. CIV. P. 93(2) (providing that "[a] pleading . . . shall be verified by affidavit . . . [t]hat there is a defect of parties, plaintiff or defendant"); *see CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 632–34 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (categorizing complaint that plaintiff was not proper party to lease against which payments

were credited as "misidentification" among "successors-in-interest," whether labeled "capacity" or "defect of parties" issue, and citing *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988)); *see also King–Mays v. Nationwide Mut. Ins. Co.,* 194 S.W.3d 143, 145 (Tex.App.-Dallas 2006, pet. denied) ("A challenge to privity is a capacity issue, not standing, and requires compliance with rule 93."). Landry's asserted its argument in its motions for directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial, or in the alternative, to modify the judgment, or in the further alternative, for a remittitur. However, Landry's failure to raise this issue in a verified denial constitutes waiver. *See Matthiessen v. Schaefer,* 900 S.W.2d 792, 795 (Tex.App.-San Antonio 1995, writ denied) (issue waived when raised for first time in amended motion for new trial). Accordingly, we decide Landry's first issue against it.

## DAMAGES

■ Landry's second and third issues concern the damages award. In its second issue, Landry's contends there was legally and factually insufficient evidence to support the damages found by the jury. Under this issue, Landry's does not argue the evidence fails to meet the standards of review for sufficiency of the evidence. Instead, Landry's makes two arguments. First, focusing on Snadon's original petition, Landry's argues that Snadon's original petition acted as an anticipatory repudiation of the lease and included a claim for damages for the whole lease term. According to Landry's, under this theory, Snadon was required to present evidence, including the present value of unpaid rents from the date of breach through the end of the lease, but did not. Thus, because this evidence is lacking, there is insufficient evidence to support the damages verdict.

Paragraph 8 of Snadon's original petition, filed in April 2003, stated that Landry's–Addison was in default of its contractual obligations under the lease "by previously abandoning the premises" and by failing to pay rent and other charges accruing under the lease through April 2003, in the total amount of $89,221.21. Paragraph 10 stated Landry's potential liability under the lease: "The premises of the Lease remain vacant and the joint and several liability of Defendants will continue to accrue until (a) expiration of the Lease, or (b) the premises are leased to a new tenant on economic terms comparable to those in the Lease, whichever should occur first." Paragraph 11 stated: "By this action, Plaintiff seeks judgment against Defendants, ..., for all sums due under the Lease on the date of judgment,...." The prayer sought judgment "jointly and severally, for all sums due under the Lease and the Guarantee on the date of judgment herein...." Nothing in the original petition repudiated the lease by declaring it at an end or concerned acceleration of monthly rent. The only request for damages concerned those accrued as of the date of judgment.

Landry's points to evidence introduced at the August 2005 trial that showed damages through the end of the lease term. However, outside the presence of the jury, Snadon's counsel stated that, in settlement discussions, the parties discussed the amount due through the end of the lease period. Snadon's counsel stated he was not requesting damages through the end of the lease term, and he presented evidence of his damages through August 2005. Accordingly, we reject Landry's insufficiency argument based on Snadon's failure to present evidence about damages from the date of breach through the end of the lease.

■ Second, focusing on Snadon's second amended petition, Landry's argues the trial court abused its discretion in permitting Snadon to amend his petition to limit damages to amounts due through the date of judgment, not future losses. Landry's argues the amendment changed the date of recovery from the end of the lease to the date of judgment, which was the legal equivalent of a new claim that was prejudicial on its face.

■ Pursuant to rules of civil procedure 63 and 66, a trial court has no discretion to refuse an amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990); *see* Tex. Rs. Civ. P. 63, 66.

Landry's knew in February 2003 that prospective tenants had expressed interest in the premises. Snadon entered into a lease with Steinmann in November 2003, and the record shows Landry's knew at least by February 2005 of this lease. Snadon's second amended petition updated his request in paragraph 8 for the amount of damages due through August 2005, the date of trial. Paragraph 10 was also amended to state that the successor tenant began paying rent in August 2004 at a rate less than that due under Landry's lease; consequently, Snadon "claims as part of its damages the differential shortfall due under the new lease as compared to the Landry's Lease." Paragraph 11 pertains to the damages sought, which was through the date of trial. The jury's answer to the damages question reflects Snadon's Exhibit 43, which showed rents due under the lease, reduced by the rent amounts Steinmann paid.

As the discussion above shows, the original petition requested damages through the date of judgment, stated as April 2003, and the amendment updated the damages request to the date of judgment in August 2005. The record does not support Landry's contention that the amendment changed the nature of the case by changing the date of recovery to the date of judgment. Because the record shows that Snadon sought and presented evidence of damages through the date of judgment only, not future losses, we reject Landry's arguments that it was surprised or prejudiced by Snadon's evidence or that Snadon asserted a new cause of action. *See Greenhalgh*, 787 S.W.2d at 939. Accordingly, we conclude the trial court did not abuse its discretion in allowing Snadon to amend his petition after verdict. We need not consider Landry's argument that any claim Snadon makes in the future for rents or other charges after the date of judgment is barred by *res judicata* or collateral estoppel because those rents and other charges are not at issue here. Having rejected Landry's arguments under its second issue, we resolve this issue against Landry's.

■ In its third issue, Landry's contends the trial court erred in denying the motion for new trial, or in the alternative, for a remittitur because the damages were excessive and not supported by legally or factually sufficient evidence. Specifically, Landry's argues that Snadon made no reasonable efforts to mitigate damages, or lease the premises on reasonable terms. Landry's argues that Steinmann's offer was the lower of the two offers received; Snadon delayed signing the Steinmann lease to maximize damages against Landry's; and the Steinmann lease included nine months of free rent and a rental rate lower than market value.

In either ordering a remittitur or in reviewing a trial court's order of remittitur, the proper standard of review is factual sufficiency. *Bentley v. Bunton*, 94 S.W.3d 561, 620 (Tex.2002); *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). We consider and weigh all of the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Ellis*, 971 S.W.2d at 406–07. This Court is not a fact finder. *Id.* at 407. Accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986)).

A landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property. TEX. PROP.CODE § 91.006 (Vernon 2007); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex.1997). However, the landlord is not required to simply fill the premises with any willing tenant; the replacement tenant must be suitable under the circumstances. *Id.* The landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided. *Id.* The tenant properly bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages. *Id.*

Question 3 asked what sum of money if paid now in cash would fairly and reasonably compensate Snadon for his damages resulting from Landry's failure to comply with the lease and the guarantee agreement. Question 3 included the following instruction: "Do not include in your answer any amount that you find Daryl N. Snadon could have earned by exercising reasonable diligence in seeking other tenants for the property in question." The jury's answer mirrored the amounts shown in Snadon's Exhibit 43.

Paragraph 18.1 of the lease provides that, upon any event of default, including vacating the premises or failing to pay rent, the landlord could terminate the lease, relet the premises "on such terms as Landlord may deem advisable," receive the rent, and the tenant agreed to pay "on demand any deficiency which may arise by reason of such reletting." There was testimony that Landry's abandoned the premises with no warning and did not respond in writing to Snadon's requests for information. Nor did Landry's respond to an April 9, 2003 demand letter for amounts due under the lease. There was evidence that the market during the time after Landry's vacated the premises was "soft" meaning it would be difficult to find a new tenant. There was evidence that both Steinmann and Karen Park submitted lease proposals. Although Park's proposed rent was slightly higher than Steinmann's, her proposal was "bare-boned." However, Steinmann intended to spend up to $1 million to refurbish the premises. Snadon and his colleagues considered Steinmann's the better offer, as did Landry's realtor and Carl Cheaney, Landry's then-senior real estate manager. In addition, there was evidence that Snadon granted Steinmann free rent between November 2003 and August 2004 in lieu of Snadon paying anything for premise improvements. Sandon testified, "I got the best deal I could get at the time, in the current market conditions." As noted above, Snadon's Exhibit 43 showed rents due under the lease, reduced by the rent amounts Steinmann paid, through August 2005.

Having considered and weighed all of the evidence relating to Snadon's reasonable efforts to mitigate damages, including that detailed above, we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. Accordingly, because we conclude the evidence is factually sufficient to support the damages award, we resolve Landry's third issue against it.

## MISSING TESTIMONY

 In its fourth issue, Landry's argues this case should be reversed and remanded because part of the reporter's record is missing due to no fault of Landry's.

As applicable to this appeal, under rule of appellate procedure 34.6(f), Landry's is entitled to a new trial if: (1) it timely requested a reporter's record; (2) without Landry's fault, a significant portion of the court reporter's electronic recording has been lost or destroyed or is inaudible; (3) the lost, destroyed, or inaudible portion of the reporter's record is necessary to the appeal's resolution; and (4) the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties. *See* TEX.R.APP. P. 34.6(f).

The lost part occurred during Landry's cross examination of Snadon about meeting with Steinmann; the record resumes with a discussion between counsel about questioning Snadon concerning his ownership of other properties. Landry's states in its brief that the lost part involved "only a few minutes"; Snadon also states in his brief that the missing part was "limited to a few minutes." Moreover, our review of the record leads us to conclude that the lost part did not concern either the proper party or the damages issues. Thus, we conclude that a "significant portion" of the record is not missing, and that the missing part is not "necessary to the appeal's resolution." *See* TEX.R.APP. P. 34.6(f)(2), (3). Accordingly, we resolve Landry's fourth issue against it.

## CONCLUSION

Having resolved Landry's four issues against it, we affirm the trial court's final judgment.