Opinion issued January 20, 2011

 



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-07-00910-CV

———————————

 

Jon A. Marshall, Appellant

 

V.

 

Harris County
Municipal Utility District No. 358, Appellee



 



 

On Appeal from the County Civil Court at Law
No. 3

Harris County, Texas



Trial Court Case No. 810,140

 



 

MEMORANDUM
OPINION

 

          This
appeal arises from a condemnation proceeding initiated by appellee, Harris
County Municipal Utility District Number 358 (“MUD 358”), to acquire property
belonging to appellant, Jon A. Marshall, for the construction of an offsite
drainage channel.  Marshall filed a
motion to dismiss the condemnation proceeding contesting the authority of MUD
358 to condemn the property and objected to the findings of damages assessed by
the appointed special commissioners.  The
trial court denied Marshall’s motion, finding after a hearing that MUD 358 had
authority to condemn the property. 
Valuation of the taking and damages to the remaining property caused by
the taking were tried to a jury.  

          On
appeal, Marshall argues that (1) the trial court erred by denying his plea to
the jurisdiction; (2) the court reporter erred by failing to record the entire
proceeding; (3) the trial court erred by concluding that MUD 358 had the
authority to condemn the property; (4) the trial court erred by excluding
Marshall’s evidence relating to post-construction damages and inverse
condemnation; and (5) the trial court erred by failing to submit certain jury
questions in the trial on damages.

          We
conclude that the trial court had jurisdiction and properly denied Marshall’s
plea to the jurisdiction.  We also
conclude that the error, if any, in failing to record the entire proceedings is
harmless because the missing portions of the record are not necessary for the
resolution of this appeal.  Furthermore,
we conclude that the trial court’s determination that MUD 358 had authority to
condemn Marshall’s property must be upheld because Marshall has not challenged
all the grounds that could support that determination.  Finally, we conclude that the trial court did
not err by excluding evidence or by refusing to submit Marshall’s proposed jury
questions.  We affirm. 

Background

          MUD 358 was
created on March 17, 1993 by order of the Texas Water Commission.  The order recited that the Water Commission
considered and granted a petition for creation of the municipal utility
district pursuant to Chapter 54 of the Texas Water Code.  See Tex. Water Code Ann. Ch. 54 (“Municipal Utility
Districts”).  MUD 358 covered
85.478 acres of land, described by metes and bounds in the order.

          On September
17, 1993, MUD 358 entered into an “interlocal contract” with Harris County
Municipal Utility Districts Numbers 322 and 354.  The contract designated MUD 358 as the
“Regional District” for the Fairfield Village Community.  The stated purpose for the contract was, 

[T]he organization
and operation of [MUD] 358 as a regional district to coordinate the planning,
construction, and maintenance of, and charging for the use of, the regional
water, sanitary sewer, and drainage facilities and services needed to serve
Fairfield Village and other regional facilities and services . . . in order to
(1) fairly and equitably share the cost of the facilities and services, (2)
benefit from the efficiencies resulting from regionalization, and (3) promote
the orderly development of the land within Fairfield Village.

  

In June
and July 2003, Harris County Municipal Utility Districts Numbers 396 and
397 accepted the terms of the interlocal contract by each signing a one-page
document incorporating the interlocal contract by reference.  

          On June 26,
2001, Marshall purchased a 67.988-acre tract of land in northwest Harris County
for $340,000, or $5,000 per acre.  It is
undisputed that Marshall’s property is located outside MUD 358’s boundaries.

          On February
3, 2004, MUD 358 filed a statutory condemnation suit to acquire 17.473 acres of
Marshall’s property for “a public project relating to the construction,
operation, and maintenance . . . of an offsite drainage channel.”  Upon filing of the petition with the trial
court, special commissioners were appointed to assess the damages resulting
from the condemnation.  The commissioners
scheduled a hearing for March 18, 2004, but at Marshall’s request the hearing
was reset for April 22, 2004.  Neither
Marshall nor a representative on his behalf attended the hearing.  The commissioners awarded compensation to Marshall
in the amount of $200,940.

          Marshall
filed objections to the award of the special commissioners on May 7, 2004,
converting the proceeding into a judicial case. 
Through amended objections to the award and a plea to the jurisdiction,
Marshall contended that MUD 358 lacked the authority or jurisdiction to bring
its condemnation case and that MUD 358 had failed to properly invoke the
jurisdiction of the trial court.   Additionally, Marshall contended that MUD 358
failed to negotiate in good faith prior to filing its condemnation petition and
that the amount of compensation awarded was less than that to which Marshall
was entitled.  MUD 358 later amended its
pleading to reduce the amount of property to be condemned from 17.473 acres (“the
larger tract”) to 5.927 acres (“the smaller tract”).  Marshall argued that MUD 358 abandoned the
condemnation suit by reducing the amount of land and that it failed to comply
with Chapter 21 of the Texas Property Code. 
See Tex. Prop. Code Ann. §§ 21.001–.103 (Vernon 2000, 2004, &
Supp. 2010).

          The trial
court held a hearing on Marshall’s motion contesting MUD 358’s authority to
condemn his property and challenging the validity of the condemnation
proceeding.  Following the hearing, the
court denied Marshall’s motion to dismiss and issued findings of fact and
conclusions of law.    

          The court
held a jury trial on the valuation of the property taken and damage to
Marshall’s remaining property caused by the taking.  The jury returned a verdict, finding the
market value of the 5.927 acres taken to be $65,197 and the damage to the
market value of the remaining property to be $13,743.

Jurisdiction

          Within his
first two issues, Marshall contends that the trial court erred by denying his “Plea
in Abatement, Plea to the Jurisdiction, and Motion to Dismiss.”  Within the argument section of his brief
pertaining to these issues, Marshall asserts the trial court erred by denying
his plea to the jurisdiction or simply asserts that the trial court lacked
jurisdiction.  However, a review of
Marshall’s brief and of the record of the proceedings below shows that Marshall
is challenging MUD 358’s authority to condemn his property.  Marshall cites no statute, case law, or
authority of any kind to support his position that MUD 358’s purportedly
wrongful condemnation of land outside of its boundaries deprives the trial
court of jurisdiction.  We have found no
such authority in our independent research.

          The one argument
that Marshall makes concerning jurisdiction has been expressly rejected by the
Texas Supreme Court.  Marshall contends
that the trial court lost jurisdiction when MUD 358 filed amended pleadings
seeking only the smaller tract instead of the larger tract that the special
commissioners considered.  The Texas Supreme
Court has rejected this argument.  See FKM P’ship v. Bd. of Regents of the
Univ. of Houston, 255 S.W.3d 619, 626 (Tex. 2008).  In FKM
Partnership, the University of Houston’s Board of Regents decided to
condemn approximately 47,008 square feet of FKM’s property.  Id.
at 624.  After special commissioner’s
determined FKM’s damages, FKM timely objected to the commissioner’s award and
requested a trial de novo in the county court at law.  Id.  The University amended its petition twice
before the county court at law; the second amended petition sought
approximately 1,260 square feet.  Id. at 625.  FKM contended that when the University filed
an amended pleading, drastically reducing the amount of land sought to be
condemned, it deprived the trial court of jurisdiction because the trial court
is limited to reviewing the issues raised before the special
commissioners.  Id. at 626.  The Supreme Court
rejected that view, holding the trial court retained jurisdiction.  Id.  Because this issue has been decided by the
Texas Supreme Court, we conclude the trial court did not err by denying
Marshall’s plea to the jurisdiction.

          We overrule
this portion of Marshall’s first three issues. 

Incomplete Reporter’s Record

          Within his
first issue, Marshall contends that the court reporter failed to make a full
record of the trial and he is, therefore, entitled to a remand for a new trial.  Specifically, Marshall asserts that the trial
court impermissibly restricted his counsel during voir dire and that “many of
the bench conferences and orders” are not part of the record.       

          Under Texas
Rule of Appellate Procedure 34.6(f), a party is entitled to a new trial if: (1)
it timely requested a reporter’s record; (2) without that party’s fault, a
significant portion of the court reporter’s notes, records, or electronic
recording has been lost or destroyed or is inaudible; (3) the lost, destroyed,
or inaudible portion of the reporter’s record is necessary to the appeal’s
resolution; and (4) the lost, destroyed or inaudible portion of the reporter’s
record cannot be replaced by agreement of the parties.  Tex. R. App. P. 34.6(f); see Landry’s Seafood House-Addison, Inc. v.
Snadon, 233 S.W.3d 430, 437 (Tex. App.—Dallas 2007, pet. denied).  Here, the portions of the record Marshall
contends are missing are the voir dire and “many bench conferences and orders.”  However, Marshall has not raised an issue
concerning reversible error occurring during voir dire or the unspecified “bench
conferences and orders.”  Because he has
not raised an issue contending that the trial court committed reversible error
during any portion of the missing record, we conclude that the missing record
is not “necessary to the appeal’s resolution.” 
See Tex. R. App. P. 34.6(f)(3). 
Accordingly, we overrule this portion of Marshall’s first issue.  See
Landry’s Seafood House, 233 S.W.3d at 430 (holding missing testimony not
necessary to resolution of appeal where missing testimony did not relate to purported
errors asserted on appeal). 

          We overrule this portion of Marshall’s
first issue.

Authority to
Condemn Marshall’s Property

          In
his first three issues, Marshall generally asserts that the trial court erred
in concluding that MUD 358 had the authority to condemn his property.  Specifically, Marshall asserts that the trial
court erred by denying his “Plea in Abatement, Plea to the Jurisdiction, and
Motion to Dismiss.”  Within these three
issues, Marshall asserts: (1) section 54.201(b)(3) of the Texas Water Code does
not allow a district to condemn land outside of its boundaries; (2) MUD 358
impermissibly delegated its power of eminent domain; (3) the taking was not
permitted because there was no “public use,” and (4) MUD 358 violated the Texas
Open Meetings Act because it did not pass a separate resolution authorizing the
condemnation of the smaller tract.

          In
his first two issues, Marshall presents legal arguments, primarily concerning
interpretation of statutes.  We review
matters of statutory construction de novo. 
City of San Antonio v. City of
Boerne, 111 S.W.3d 22, 25 (Tex. 2003). 
In construing a statute, our objective is to determine and give effect
to the Legislature’s intent.  State v. Gonzalez, 82 S.W.3d 322, 327
(Tex. 2002).  “If a statute’s meaning is
unambiguous, we generally interpret the statute according to its plain meaning.”
 Id.
 In determining legislative intent, we
look at the entire act as a whole, rather than isolated portions.  Id.  

          In
his third issue, Marshall contends that the evidence is legally and factually
insufficient to support the trial court’s findings of fact. We review a trial
court’s findings of fact for legal and factual sufficiency of the evidence by
the same standards applied to a jury verdict.  Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996).  We review a trial court’s conclusions of law de
novo.  BMC Software Belgium, N.V. v.
Marchand,
83 S.W.3d 789, 794 (Tex. 2002). 

          1.       Authority to Condemn

          Marshall
first contends that the language of the Water Code does not authorize MUD 358
to condemn his property because it is outside of MUD 358’s boundaries and it is
not necessary for MUD 358’s use.  MUD
358 responds that the Interlocal Cooperation Contracts Act (“the Act”),
Chapter 791 of the Government Code, to support its actions as a regional
district[1] acting on behalf of MUDs
396 and 397.  See Tex. Gov’t Code Ann. §§ 791.001–.033 (Vernon 2004
& Supp. 2010).  The Act “allows
political subdivisions to contract with one another to more efficiently share
resources and responsibilities.”  Ben Bolt-Palito Blanco Consol. Indep. Sch.
Dist. v. Tex. Political Subdiv. Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d
320, 322 (Tex. 2006) (citing Tex. Gov’t
Code Ann. § 791.001
(“The purpose of this chapter is to increase the efficiency and effectiveness
of local governments by authorizing them to contract, to the greatest possible
extent, with one another and with agencies of the state.”)).  “Under the Act, a local government may
contract with another local government to perform authorized governmental
functions and services.”  Id. (citing Tex. Gov’t Code Ann. § 791.011(a), (b)).  “Local governments under the Act include
municipalities, special districts, counties, and other political subdivisions,
as well as combinations of such entities.” 
Id. (citing Tex. Gov’t Code Ann. § 791.003(4)).

          Here,
the trial court made specific findings of fact relating to the interlocal
contract.  The court found:

4.       That on March 1, 1992, the District
entered into the Contract for Financing, Operation, and Maintenance of Regional
Water, Sanitary Sewer, and Drainage Facilities for the Fairfield Village
Community (the “Regional Contract”) through which the District agreed to act as
“Regional District’ for the other municipal utility districts within Fairfield.
Pursuant to the Regional Contract, the District is obligated to lease, acquire,
construct and extend Regional
Facilities for providing water, sanitary sewer, and drainage facilities, within
the Service Area of the Regional District.

 

          . . . .

11.     On June 17, 2003, Harris County Municipal
Utility District No. 397 accepted the Contract for Financing, Operation, and
Maintenance of Regional Water, Sanitary Sewer, and Drainage Facilities for the
Fairfield Village Community.

 

12.     On July 29, 2003, Harris County Municipal
Utility District No. 396 accepted the Contract for Financing, Operation, and
Maintenance of Regional Water, Sanitary Sewer, and Drainage Facilities for the
Fairfield Village Community.

 

          The trial
court also made the following conclusion of law:

4.       The District was authorized to enter into
the Contract for Financing, Operation, and Maintenance of Regional Water,
Sanitary Sewer, and Drainage Facilities for the Fairfield Village Community and
to file this condemnation action as Regional District under this contract on
behalf of Harris County Municipal Utility District No. 396 and Harris County
Municipal Utility District No. 397.

 

          Marshall does
not challenge these findings or conclusions on appeal.  Marshall’s opening brief does not mention
these findings and conclusions or the Act at all.  MUD 358’s engineer, Cindy Albers,
testified that the condemned property would be used to create an outfall
drainage channel that would “serve properties within Harris County MUD No. 396
and Harris County MUD No. 397.”   An
appellant must challenge all the bases for a trial court’s ruling or judgment
complained of on appeal.  See Britton v. Tex. Dep’t of Crim. Justice,
95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing Midway Nat’l Bank v. W. Tex. Wholesale
Supply Co., 453 S.W.2d 460, 460–61 (Tex. 1970)).  Marshall has not done so in this appeal.  Accordingly, we must uphold the trial court’s
determination that MUD 358 had the authority to condemn Marshall’s property
under the Act.

          We overrule
this portion of Marshall’s first three issues. 

          2.       MUD 358 Impermissibly Delegated its Eminent
Domain Power

          Marshall’s
brief on this issue states, in its entirety, as follows:

Further the suit and engineering work are underwritten by
Exxon Land Development, Inc./Friendswood for their private use for
Fairfield.  Marshall submits the
substance over form of this pre-funding agreement, means this taking is a sale
or impermissible delegation of the power and authority of [MUD 358] (see Burch v. City of San Antonio, 518 S.W.2d
[540,] 543–45 [(Tex. 1975]), in violation of the Texas Constitution, enabling
Order of the Water Commission Order [sic], Water Code, and Property Code.  This pre-funding agreement, paying all costs
and expenses coupled with appointing the Board essentially vested in Exxon Land
Development, Inc./Friendswood the decision and discretion on what to take, what
to build, what to offer to pay, who will offer to pay, what to pay, and when to
proceed.

 

(Record references omitted.)

          In Burch, the Texas Supreme Court held that
the City of San Antonio could not delegate its power of eminent domain to its
Water Works Board of Trustees without an express Legislative grant of the power
to do so.  Burch, 518 S.W.2d at 545.  In
the words of the Supreme Court, “[T]he city council is the authority to exercise
the power of eminent domain and must itself officially express the intention
and necessity to condemn the land in question for the City’s water
system.”  Id.  Here, it is undisputed that
the Board, not “Exxon Land Development, Inc./Friendswood,” passed a resolution
declaring a public necessity to acquire Marshall’s property for public use.  The trial court made findings of fact, which
are not challenged by Marshall in this appeal, that the Board determined that
there was a public necessity to acquire Marshall’s land for drainage
purposes.  MUD 358 filed the condemnation
proceedings, not some other entity.  In
unchallenged findings, of fact, the trial court found that the Board authorized
its agents to file the condemnation proceeding. 
Here, the Board itself took the necessary actions, unlike the situation
in Burch, where the city council
delegated the authority to the board of trustees for the city’s water system.  See id.  We, therefore, conclude that MUD 358 did not
impermissibly delegate its power of eminent domain.[2]

          We
overrule this portion of Marshall’s first three issues.  

          3.       The Taking was not Authorized Because there
was no Public Use 

          Within
this portion of his first three issues, Marshall contends that the taking of
the smaller tract was not for a public use and that there was no public
necessity for taking the smaller tract.

                    A.      Public
Use

          Whether
a use is a “public use” is a question of law for the court.  Malcomson
Rd. Util. Dist. v. Newsom, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st
Dist.] 2005, pet. denied).  However, a
legislative declaration that a use is public is binding on this Court unless
the use is “clearly and palpably” a private use.  Id.
at 266 (quoting Hous.
Auth. of the City of Dallas v. Higginbotham, 143 S.W.2d 79, 83 (Tex. 1940)).  The Legislature has declared drainage
activities engaged in by a municipal utility district a public use.  Id.
(citing Tex. Water Code Ann. § 54.201(a), (b)(3)). 

          Here, Marshall does not dispute that
drainage is a public use, but instead asserts that MUD 358 can only serve the
“public” located within its geographical boundaries.  However, we have already held that under the
interlocal contract, which Marshall has not challenged on appeal, MUD 358 was
authorized to act on behalf of MUD 396 and MUD 397.  MUD 358’s engineer, Albers, testified that the
condemned property would be used for drainage of property within MUD 396 and
MUD 397.  Furthermore, MUD 358 owned
and operated retention and drainage lakes within the boundaries of MUDs 396 and
397, and the overflow from these lakes would drain over the condemned property.  Condemnation for drainage under these
circumstances is a public use.  Id.

                   B.      Public
Necessity             

          “When
the use is public, the necessity or expediency of appropriating any particular
property is not a subject of judicial cognizance.”  Higginbotham,
143 S.W.3d at 89, quoted in FKM P’ship,
255 S.W.3d at 630.  A government agency’s
determination of public necessity is “presumptively correct, absent proof by
the landowner of the agency’s fraud or proof that the condemning authority
acted arbitrarily or capriciously.”  FKM P’ship, 255 S.W.3d at 629.

          Here,
MUD 358’s Board determined that there was a public necessity to  condemn Marshall’s property.  The resolution passed by the Board concerning
the condemnation of Marshall’s property states, in pertinent part,  

[T]the Board of Directors of the District has determined
that, in order to accomplish the public purposes for which the District was
created and in order for the Regional District to effectively provide drainage
services to the Service Area (as defined in the Regional Facilities Contract),
it is necessary and in the best interests of the Regional District to construct
an offsite drainage channel to drain stormwaters from within the Service Area
to Little Cypress Creek; and 

 

[T]he District’s Board of Directors has determined that
there is a public necessity to acquire certain property on the north side of
Schiel Road for such offsite drainage channel, specifically [Marshall’s
property], described in Exhibit “A” attached to this Resolution and
incorporated for all purposes (the “Tract”); and

 

[T]the District has been unable to negotiate the purchase
of the Tract, and the public necessity requires that the Tract be acquired through
the exercise of the District’s power of eminent domain as provided in § 49.222,
Texas Water Code . . . .

 

          Once Again,
Marshall does not dispute these facts, but instead argues that, because his
property is 2.65 miles outside MUD 358’s boundaries, the condemnation of his
property is not necessary to drain the land of the public located inside MUD
358’s boundaries.  However, as noted
above, the trial court determined that MUD 358 was authorized to act on behalf
of MUD 396 and MUD 397 under the interlocal contract, and Marshall does
challenge that determination on appeal.  Nor
does Marshall dispute that MUD 358 owned and operated retention lakes within
the boundaries of MUD 396 and 397. 
Marshall also generally asserts that MUD 358’s determination of public
necessity was fraudulent, arbitrary or capricious.  However, Marshall does not identify any
evidence that supports this argument. 
We, therefore, presume MUD 358’s determination of public necessity is
correct.  See FKM P’ship, 255 S.W.3d at 629. 

          4.       Violation of the Texas Open Meetings Act 

          Marshall
also contends that MUD 358 did not have authority to condemn the smaller tract
because at the time it filed its amended petition seeking the smaller tract
instead of the larger tract, MUD 358’s Board had not passed a resolution in
accordance with the Texas Open Meetings Act authorizing the taking of the
smaller tract.  Specifically, Marshall
contends that because MUD 358’s Board did not pass a separate resolution
authorizing the condemnation of the smaller tract and did not give notice of
intent to reduce the taking from the larger tract to the smaller tract, MUD 358
lacked authority to condemn the smaller tract.

          Marshall
does not cite any provision of the Texas Open Meetings Act that he claims was
violated.  According to his brief, he
complains that the Board of MUD 358 decided to take the smaller tract instead
of the larger tract—“an action taken without a corresponding posted Agenda
item.”  See Tex. Gov’t Code Ann. § 551.041 (Vernon 2004) (“A governmental body shall give written
notice of the date, hour, place, and subject of each meeting held by the
governmental body.”).  However,
the Board was not required to hold a meeting and pass a separate resolution
reducing the amount of the taking.  Although
it was not addressing the Texas Open Meetings Act, the Texas Supreme Court addressed
this issue in FKM Partnership.   See
FKM P’ship, 255 S.W.3d 619 at 630. 
In that case, the property owner asserted that the Board of Regents for
the University of Houston “did not pass a separate resolution specifically
authorizing condemnation of the smaller tract.” 
Id.  The Texas Supreme Court stated, 

We do not agree with FKM, however, that a separate Board
resolution is necessary every time a condemnor decides to acquire less property
than it originally sought.  FKM does not
reference a statutory or procedural requirement for its position, and a
resolution authorizing condemnation of a whole tract of land necessarily
authorizes condemnation of the separate parts that comprise the whole.  We see no reason that the Board could not
vote to condemn a tract of land for public use then depend on and allow its
agents, subject to the Board’s supervision and approval, to determine that less
than the whole tract would suffice to fulfill the Board’s purposes or would fit
within the University’s budget.  And if
the Board does so, then it could reasonably depend on the agents to negotiate
for less than the whole tract or, if suit has been filed as in this case, amend
its condemnation petition to seek a smaller tract.  

 

Id.  Because a separate action at a Board meeting
was not required, no separate notice was required.  See Tex. Gov’t Code Ann. § 551.041 (requiring notice of “each meeting”);
see also id. § 551.001(4)(a) (Vernon
supp. 2010) (defining “meeting” to include “a deliberation . . . during
which public business or public policy over which the governmental body has supervision
or control is discussed or considered or during which the governmental body
takes formal action”).

          We overrule
this portion of Marshall’s first three issues. 

Exclusion of Evidence

          In his fifth
and sixth issues, Marshall contends that the trial court erred by excluding evidence
relevant to his counterclaim for inverse condemnation, his affirmative defenses
to MUD 358’s condemnation claim, and his post-construction damages.

          1.       Standard
of Review

          Evidentiary rulings are committed
to the trial court’s sound discretion.  Bay Area
Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007).  We review a trial court’s decision to admit or exclude evidence for
an abuse of that discretion.  In re J.P.B., 180 S.W.3d 570, 575
(Tex. 2005).  “A trial court abuses its discretion
when it acts without reference to any guiding rules and principles.”  Garcia v. Martinez, 988 S.W.2d
219, 222 (Tex. 1999).  We must uphold the
trial court’s evidentiary ruling if there is any legitimate basis for the ruling.
 Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998); Oyster Creek Fin. Corp. v.
Richwood Invs. II, Inc.,
176 S.W.3d 307, 317 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  “[I]n addition to showing
an abuse of discretion, a party complaining of
error in the exclusion
of evidence
must also show that the trial court’s error was reasonably calculated to cause,
and probably did cause, the rendition of an improper judgment.”  Madison v. Williamson, 241 S.W.3d 145, 151 (Tex. App.—Houston
[1st Dist.] 2007, pet. denied) (quoting City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995) and
citing Tex. R. App. P.
44.1(a)(1)).

          2.       Inverse
Condemnation Evidence

          “Inverse
condemnation occurs when (1) a property owner seeks (2) compensation for (3)
property taken for public use (4) without process or a proper condemnation
proceeding.”  Villarreal v. Harris County, 226 S.W.3d 537, 542 (Tex. App.—Houston
[1st Dist.] 2006, no pet.); see also City
of Houston v. Texan Land & Cattle, Co., 138 S.W.3d 382, 387 (Tex. App.—Houston
[14th Dist.] 2004, no pet.)  The
proceedings is called “inverse” because the property owner, rather than the
government, brings the suit.  Texan Land & Cattle, Co., 138 S.W.3d
at 387. 

          Here,
Marshall’s theory concerning inverse condemnation is that after the special
commissioner’s award of damages and MUD 358’s deposit of those damages with the
court, and during the pendency of the trial de novo in the trial court, MUD 358
constructed drainage facilities on the smaller tract.  The construction impaired the drainage of
Marshall’s remaining property and amounted to a taking of his property for
public use without adequate compensation. 


          Marshall’s
specific argument is that the trial court abused its discretion 

in denying Marshall the opportunity to establish . . .
his Counter-claim and violated his constitutional right to his full jury trial,
Vernon’s Ann. Tex. Constit. art. 1, Sec. 15. 
The Bill of Rights to our Constitution recites and it has been long
held, that Marshall is entitled to trial by jury, Cockrill v. Cox, 65 Tex. 669, 672–73, [sic] [(]Tex. 1886).

 

Although Marshall contends that the trial court abused its
discretion, Marshall does not address the trial court’s expressed reason for
not allowing evidence of Marshall’s inverse condemnation claim before the jury.           Marshall,
in asking the trial court to allow his inverse condemnation claim to go forward,
explained to the trial court that MUD 358 filed the condemnation suit in
February 2004.  After the commissioner’s
hearing, MUD 358 deposited the commissioner’s award with the court.  Marshall objected and the proceedings in the
trial court began.  Marshall further
explained that it was not until June 2005 that MUD 358 amended its pleadings to
reduce the amount of land sought to be condemned.  In October 2005, MUD 358 presented Marshall
with the preliminary construction plans. 
After the hearing on Marshall’s “Plea in Abatement, Plea to the
Jurisdiction and Motion to Dismiss” in March 2006, MUD 358 informed Marshall
that construction began on July 31, 2006 and presented Marshall with the final
plans in August 2006.  Marshall filed his
counterclaim for inverse condemnation on August 8, 2006.  Marshall was unable to inform the trial court
if the construction had been finished. 
The trial court ruled that it would not allow the inverse condemnation
claim to proceed.  The next day, Marshall
asked the trial court to reconsider.  The
trial court explained, “[A]s a matter of law, given the nature of when the
events occurred, which were outlined extensively by your co-counsel yesterday,
there is no constitutional takings claim that is [ripe] at this time.”  Marshall does not contend that the trial
court erred in concluding that, because construction was not complete, no
inverse condemnation claim could proceed. 
Both the trial court’s statements and MUD 358’s representations to the
trial court leave open the possibility for Marshall to bring a separate inverse
condemnation suit for the change in conditions on his property due to the
construction.  The trial court
specifically stated that the inverse condemnation claim could not go forward
“at this time.”  MUD 358 pointed out that
Marshall’s experts had only prepared reports concerning his damages as of May
2004, long before the construction began. 
Based on the record before us, we cannot conclude that Marshall has
shown that the trial court abused its discretion in limiting the issues in this
case to the damages caused by the taking of the smaller tract.

          3.       Affirmative Defense Evidence

          Within his
argument for his fifth and sixth issues, Marshall asserts, “Landowners are
still allowed an opportunity to prove the taking is fraudulent, arbitrary, and
capricious, FKM Partnership, 225
S.W.3d at 629–30.”  Marshall further
states, 

Marshall is entitled to invoke his Constitutional right,
art. 1 Sec. 17 and Sec. 19, to contest the takings and submit evidence that the
taking is not for a public purpose, that this taking is fraudulent, arbitrary,
or capricious, FKM Partnership, 225
S.W.3d at 629–30.  The court refused to
allow his evidence, this was harmful error and he was denied these rights.

 

          These two excerpts
are the entirety of Marshall’s briefing on this issue.  Marshall does not cite to any authority
discussing what showing may be required to establish that a taking is
“fraudulent, arbitrary, or capricious.” 
Although his fifth and sixth issues deal with erroneously excluded
evidence, Marshall does not identify the evidence that he contends was excluded
nor attempt any analysis of how the excluded evidence is relevant to the issue
of a “fraudulent, arbitrary, or capricious” taking.  When an appellant cites to no authority, or
only one or two irrelevant or inapposite authorities, and fails to provide any
analysis or argument to support the contentions made on appeal, any error is
waived due to inadequate briefing.  See Izen
v. Comm’n for Lawyer Discipline, 322 S.W.3d 308, 321­–22 (Tex. App.—Houston [1st
Dist.] 2010, pet. filed) (citing Tex.
R. App. P. 38.1(i);
Woodside v. Woodside,
154 S.W.3d 688, 691 (Tex. App.—El Paso 2004, no pet.) (holding issue waived
when only authorities cited were “a few irrelevant cases and statutes”)); see also Brock v. Sutker, 215 S.W.3d 927, 929 (Tex.
App.—Dallas 2007, no pet.) (holding issue is waived by brief that makes no
attempt to analyze trial court’s purported error within context of cited authority).


          4.       Damages
Evidence

          The evidence
that Marshall identifies as being erroneously excluded is actually evidence
concerning his inverse condemnation claim, that is, evidence of the impaired
drainage after the construction.  For
example, in “Defendant’s Bill Exhibit 27,” Marshall submitted photographs
showing standing water, debris, and other damages from the drainage on his
property.  In his brief, Marshall asserts
that these photographs show that the drainage channel “as built . . . has berms and barriers that prevent drainage and
have turned Marshall’s property as it adjoins the channel, into a mess, with
standing water and debris.”[3]  (Emphasis added.) Similarly, Marshall asserts
the trial court erred by striking testimony of his expert witness concerning
the value of the property.  The trial
court, in sustaining MUD 358’s objections, instructed the jury to disregard
“the witness’[s] testimony regarding drainage
of the property.”  (Emphasis added).  

          Marshall has
not identified any excluded evidence of damages from the condemnation apart
from evidence concerning drainage after construction.[4]  Because we have already held that Marshall
failed to show the trial court abused its discretion concerning the inverse
condemnation claim caused by the construction, we conclude the trial court did
not abuse its discretion in excluding the evidence identified by Marshall.  

          We overrule
Marshall’s fifth and sixth issues.

Failure to Submit Marshall’s Jury Charge

          In his fourth
issue, Marshall contends that the trial court erred by refusing to submit his
proposed charge to the jury.

          “The court shall submit such
instructions and definitions as shall be proper to enable the jury to render a
verdict.”  Tex. R. Civ. P. 277. 
“The court shall submit the questions, instructions and definitions in
the form provided by Rule 277, which are raised by the written pleadings and
the evidence.”  Tex. R. Civ. P. 278.  “Failure
to submit a question shall not be deemed a ground for reversal of the judgment,
unless its submission, in substantially correct wording, has been requested in
writing and tendered by the party complaining of the judgment . . . .”  Id.  “Failure to submit a definition or
instruction shall not be deemed a ground for reversal of the judgment unless a
substantially correct definition or instruction has been requested in writing
and tendered by the party complaining of the judgment.”  Id.  In addition to the requirement that a party
tender questions, definitions, or instructions it wishes to submit to the jury,
the party must secure a ruling from the trial court on his proposed
submissions.  See Tex. R. Civ. P. 276
(providing trial court’s endorsement of “refused” or “modified” on proposed
question, definition, or instruction results in conclusive presumption party
presented issue to trial court and preserved issue for appellate review).  Although these rules contain technical
requirements for preserving error concerning the charge, the Texas Supreme
Court has explained that the preservations is generally determined by
“whether the party made the trial court aware of the complaint, timely and
plainly, and obtained a ruling.”  Ford Motor Co. v. Ledesma, 242 S.W.3d
32, 43 (Tex. 2007) (quoting State Dep’t
of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)).

          Marshall
filed a proposed jury charge with the trial court.  Beneath each requested instruction,
definition, or question there was a space for the trial court to endorse “given,”
“refused,” or “modified.”  However, the
trial court did not endorse any of the questions.  Therefore, error with respect to the charge
was not preserved in accordance with rule 276. 
See Tex. R. Civ. P. 276.  During the charge conference, Marshall stated
to the trial court that he agreed to the charge the trial court gave to the
jury, but “reserved the right to make objections to the issues that weren’t
submitted to the jury.”  Concerning the
objections, the record shows the following: 


THE COURT: Anybody who has anything to say about
the charge, now come forth and do so because this is the charge that I intend
to give to the jury.

          My
understanding is that it is agreed to, but it is not exactly agreed to because
there are some things that were omitted that Mr. Marshall’s attorneys would
like admitted. 

          So
at this time, go ahead and submit what you think should be in the charge and we’ll
look at it.

 

. . . .

 

[Marshall’s Counsel]: We had submitted post questions
regarding the taking and in the underlying case, there are certain things that
the jury is entitled to hear. The questions on Page 7 of our submission was
Harris County Municipal Utility District 358’s decision to take the Marshall property
was in bad faith or fraudulent.

          We
were not allowed to present evidence to that effect, so I don’t know that there’s
any evidence to present to the jury.  So that
question may well be moot

 

. . . .

 

THE COURT: I’m not going to submit your proposed
question for all the reasons we talked about.  There’s no evidence submitted to the jury on that
issue anyway, and this is going to be the charge of the Court.

 

          As shown by
the record excerpt above, Marshall’s counsel identified a single page from his
proposed jury charge.  The submission Marshall brought to the trial
court’s attention asked whether MUD 358’s decision to take Marshall’s property
was “arbitrary and capricious, made in bad faith, or fraudulent.”  On this page, Marshall also included proposed
definitions for “arbitrary and capricious,” “bad faith,” and “fraudulent.”  The trial court responded stating it
would not submit Marshall’s “proposed question.”  Neither Marshall nor the trial court made any
reference to other questions or proposed definitions or instructions.  There is nothing in the record to show that
the Marshall called any other questions, definitions, or instructions to the
trial court’s attention or that the trial court ruled upon any other proposed
questions, definitions, or instructions. 
Therefore, with the exception of the single question specifically
brought to the trial court’s attention, any error in failing to submit
Marshall’s proposed questions, definitions, or instructions is not preserved
for our review.  See Ford Motor Co., 242
S.W.3d at 43.

          With respect to the questions and
definitions Marshall did bring to the trial court’s attention, Marshall
generally asserts that the trial court erred by refusing to submit them.  Here, it is undisputed that the trial court did not
allow any evidence concerning fraud, arbitrariness, and capriciousness, which Marshall
raised as a separate complaint on appeal. 
See Tex. R. Civ. P. 278. 
Furthermore, Marshall does not assert or cite any authority to show that
his requested question and definitions were “substantially correct.”  See id.  Therefore, we hold that Marshall has not
shown that the trial court abused its discretion in refusing his requested
question and definitions concerning a fraudulent, arbitrary, or capricious
determination of public necessity.

          We overrule Marshall’s fourth issue.




 

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Sam
Nuchia

                                                                   Justice


 

Panel consists of Chief Justice Radack,
Justice Massengale, and Justice Nuchia.[5]











[1]           In his brief, Marshall asserts that
MUD 358 never received Water Commission approval to act as a statutory regional
district under chapter 59 of the Water Code. 
However, “Regional District” is also the term used in the interlocal
contract entered into by MUD 358 and the other MUDs servicing Fairfield.  The trial court’s findings of fact and
conclusions of law only mention the interlocal contract, not chapter 59 of the
Water Code.  Furthermore, in its
appellee’s brief, MUD 358 does not purport to have authority as a “regional
district” under chapter 59.  We therefore
address only the authority under the Interlocal Cooperation Contracts Act.  





[2]           At oral argument, Marshall raised the
issue of whether MUD 358 could exercise the power of eminent domain on behalf
of MUD 396 or MUD 397.  However, as noted
above, Marshall did not challenge the trial court’s findings of fact or
conclusions of law pertaining to MUD 358’s authority under the Act.  Furthermore, in Marshall’s, argument quoted
above, he asserts that MUD 358 impermissibly delegated its power of eminent
domain to the developer, not that MUD 396 and MUD 397 delegated their power of
eminent domain to MUD 358.  Because it
was not raised in Marshall’s brief, we decline to address this argument.  See
Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993) (“We have held repeatedly that the courts of appeals may not
reverse the judgment of a trial court for a reason not raised in a point of
error.”).





[3]           Marshall also asserts “[Witnesses]
were precluded by the Judge, from giving the jury testimony on the damages resulting from the construction.”
(Emphasis added.)

 





[4]           In addition to the evidence mentioned
above, Marshall contends the trial court erred in striking some of his
testimony.  The testimony that Marshall
identifies was his statement that there was no agreement between MUD 358 and
himself allowing him to drain into the channel. 
Marshall also identifies testimony from his engineer, Atkinson, that was
struck by the trial court.  However, this
testimony concerned drainage after construction.  





[5]
       The
Honorable Sam Nuchia, Senior Justice, Court of Appeals for the First District
of Texas, sitting by assignment.