**CITY OF HOUSTON, Appellant,**

v.

**TEXAN LAND AND CATTLE CO. & Henry J.N. Taub, Appellees.**

No. 14–02–00885–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2004.

Rehearing Overruled July 8, 2004.

Andrea Chan, Jaqueline I. Leguizamon, C. Charles Dippel, Houston, for appellant.

Kevin Dubouse, J. Marcus Hill, William E. Ryan, for appellees.

Panel consists of Justices J. HARVEY HUDSON, EDELMAN, and GUZMAN.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, the City of Houston ("City") appeals from a judgment in a favor of appellees, Texan Land and Cattle Co. and Henry J.N. Taub ("Texan") concerning damages awarded under both inverse condemnation and statutory condemnation claims. The City asserts multiple points of error: (1) the trial court erred in finding as a matter of law that the City had "taken" Texan's property; (2) the trial court erred in awarding prejudgment interest on the inverse condemnation award; (3) the trial court erred in awarding prejudgment interest on the condemnation award; (4) the award of prejudgment interest on both the inverse condemnation claim (temporary taking) and the statutory condemnation claims is excessive as it results in a double recovery; and (5) it was error to condition the City's right to possess the property on any amount in excess of the statutory condemnation award. Texan also asserts a cross appeal challenging the trial court's refusal to award attorney's fees in its declaratory judgment action. We affirm in part, and reverse and remand in part.

Texan owns a 3.8 acre tract in the Brookhaven Addition ("the property"). The City began acquiring neighboring properties in 1986 in preparation for the development of Beech–White Park ("park"). Construction of the park began on January 27, 1997, with the placement of bollards in Lydia Street and the fencing of the park property. The blocking of Lydia Street at its intersection with Scott Street gives rise to this dispute. The record reveals that Lydia Street is the only means of access to Texan's property. The property is bordered on one side by a Union Pacific Railroad, which cannot be crossed because of the company's policy against at-grade crossings and the existence of a pipeline right of way. The property is almost connected to Conley Street; however, an impassible ten-foot easement prevents access through Conley Street.

On August 12, 1998, Texan sent a notice to the City complaining of a "taking/damaging and blocking of the ingress and egress" to the property as Texan held a right of way through Lydia Street to its property. Subsequently, Texan filed its inverse condemnation claim against the City on September 15, 1998. Texan alleged that the City engaged in a taking under Article I, Section 17 of the Texas Constitution by blocking access to its property. In December 2001, Texan amended its pleadings to add a declaratory judgment action asking the court to declare the parties' rights with respect to Lydia Street. Texan also sought attorney fees in connection with its declaratory judgment action.

Pursuant to *State v. Wood Oil Distributing, Inc.*, 751 S.W.2d 863 (Tex.1988), the trial court held a week-long pretrial evidentiary hearing to determine whether there was a material and substantial taking of Texan's property and what evidence would be admissible at trial. The evidence presented at the hearing established that the City had blocked Texan's only access to the property when it blocked Lydia Street. The trial court found the City's actions resulted in a material and substantial impairment and denial of access to Texan's property, which was a taking or damaging for a public use under the Texas Constitution. *See* TEX. CONST. art. I, § 17.

The trial was set to begin on February 21, 2002. On the same morning, the City filed a counterclaim to condemn the property pursuant to Section 21.017 of the Texas Property Code. The case proceeded to trial and evidence was presented on both claims. Questions were submitted to the jury on Texan's inverse condemnation

claim,[1] the City's condemnation counterclaim,[2] and the amount of reasonable attorney fees incurred by Texan. The jury found that Texan was entitled to $79,536.20 on the inverse condemnation claim and $334,881.28 on the statutory condemnation claim. The trial court's judgment awarded Texan $414,417.48 on both claims and $214,588.78 in prejudgment interest for the period of January 21, 1997 to March 27, 2002. Additionally, the judgment made the City's right to possess the property contingent on the payment of the entire damage award.

◼ The City asserts in its first issue that the trial court erred in ruling as a matter of law that the City had "taken" Texan's property. The City argues that there can be no taking absent an actual physical invasion or appropriation. This is simply a misstatement of the law.

◼ An inverse condemnation proceeding is the proper avenue to seek redress when property has been taken or damaged for public use without compensation or a proper condemnation proceeding. *Tex. Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 148 (Tex.App.-Austin 1998, no pet.). The proceeding is denominated "inverse" because the property owner brings the suit. *See Callaway*, 971 S.W.2d at 148; *Trail Enter., Inc. v. City of Hous-*

*ton*, 957 S.W.2d 625, 630 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). "It is settled that a direct physical invasion of property is not required under the present provisions of Article I, Sec. 17, of the Constitution of Texas to entitle an owner to compensation." *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex.1965). A landowner will be compensated for the denial of access if he proves that he suffered a substantial and material impairment of access to his land. *State v. Heal*, 917 S.W.2d 6, 10 (Tex.1996); *City of Waco v. Texland*, 446 S.W.2d 1, 2 (Tex.1969). In order to show material and substantial impairment, the property owner must establish (1) a total temporary restriction of access, (2) a partial permanent restriction of access, or (3) a partial temporary restriction of access due to illegal or negligent activity. *State v. Schmidt*, 867 S.W.2d 769, 775 (Tex.1993); *City of Austin v. Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986). The "material and substantial test" acknowledges situations in which the access for which the property was specifically intended is rendered unreasonably deficient even though normal access remains reasonably available. *Heal*, 917 S.W.2d at 10.

◼ The determination of whether a compensable taking has occurred is a

1. "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would compensate Texan Land and Cattle Company and Henry J.N. Taub, for the temporary taking of their Property by the City of Houston from January 21, 1997 until January 20, 2002?
 You are instructed that the measure of damages for the temporary taking of the Property by the City of Houston is the market value to rent the Property from January 21, 1997 to January 20, 2002."

2. "What is the fair market value of the Property on February 20, 2002 as if the Property had legal access to Lydia Street?"

 You are instructed that 'fair market value' means the price which the Property would bring when offered for sale by one who desires to sell, but is not obliged to sell, and brought by one who desires to buy, but is under no necessity of buying, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future. You are instructed that 'legal access' means the right of ingress and egress from the Property to Scott Street by way of Lydia."

question of law for the court that may be reviewed de novo by the court of appeals. *City of Austin v. Travis County Landfill,* 73 S.W.3d 234, 241 (Tex.2002). The evidence presented to the trial court revealed that Lydia Street provided the only access to the property. Therefore, there was a compensable taking of the property due to a total denial of access. The City's first issue is overruled.

In its second issue, the City complains the trial court erred in awarding prejudgment interest on the inverse condemnation claim. The Texas Supreme Court has, in its jurisprudence, established a rule for the accrual of prejudgment interest. A claim for prejudgment interest may have one of two bases: (1) general principles of equity or (2) an enabling statute. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex. 1985). Previously, a distinction was made between those causes of action specifically mentioned in the Finance Code[3] and those arising under common law. However, the supreme court aligned the common law prejudgment interest accrual scheme with the Finance Code in *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 531 (Tex.1998). Under both the Finance Code and the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date the suit is filed. Tex. Fin.Code Ann. § 304.104 (Vernon Supp. 2003); *Johnson & Higgins,* 962 S.W.2d at 531.

Here, the trial court held that prejudgment interest began to accrue when the temporary taking or denial of access began, *i.e.,* January 27, 1997, the day the City closed Lydia Street. The City contends that prejudgment interest should have begun to accrue on September 15, 1998, the date Texan filed suit. However, the right to prejudgment interest in eminent domain cases is based not on a legislative enactment or the common law, but on the Texas Constitution. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 738 (1941).

The constitution states: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." Tex. Const. Art. I, § 17.[4] There is no essential difference between "adequate compensation" under our State Constitution, and "just compensation" under the Fifth Amendment of the Federal Constitution. *Wileman v. Wade,* 665 S.W.2d 519, 520 (Tex.App.-Dallas 1983, no writ). In other words, a condemnee must be paid for what he has lost. *State v. Ware,* 86 S.W.3d 817, 825 (Tex.App.-Austin 2002, no pet.). "He is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

The purpose of prejudgment interest is to compensate a party for the lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *John-*

---

**3.** Section 304.101 and the relevant subchapter governs prejudgment interest in wrongful death, personal injury, and property damage cases.

**4.** The constitution authorizes compensation and prejudgment interest when a land owner has been denied access to his property. *See*

*City of Waco v. Texas Coffin Co.,* 472 S.W.2d 800, 804 (Tex.Civ.App.-Waco 1971, writ ref'd n.r.e.); *see also Hale,* 146 S.W.2d at 738; *City of Abilene v. Downs,* 386 S.W.2d 877, 878–79 (Tex.Civ.App.-Fort Worth 1965, writ ref'd n.r.e.).

son & Higgins, 962 S.W.2d at 528 (quoting Cavnar, 696 S.W.2d at 552). In other words, prejudgment interest is one component in making the plaintiff whole. Notwithstanding this purpose, the legislative policy behind the Finance Code and the supreme court's common law rule was one of tort reform, designed to encourage settlements. *Johnson & Higgins*, 962 S.W.2d at 531–32. Neither Section 304.104 of the Finance Code nor the common law rule announced in *Johnson & Higgins* satisfy the constitutional mandate that the condemnee be made whole, and we find that neither is applicable here.[5]

In condemnation cases, prejudgment interest begins accruing on the date of the constitutional taking.[6] *See City of Glenn Heights v. Sheffield Development Co.*, 61 S.W.3d 634, 658–59 (Tex.App.-Waco 2001, pet. granted); *State v. Sledge*, 36 S.W.3d 152, 156–57 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *City of Austin v. Foster*, 623 S.W.2d 672, 674–75 (Tex.Civ. App.-Austin 1981, writ ref'd). Thus, the trial court properly used January 27, 1997, as the accrual date for the prejudgment interest award. The City's second issue is overruled.

In its third and fourth issues, the City makes two related complaints: (1) it was error to award Texan prejudgment interest on the condemnation award and (2) the award of prejudgment interest on both the temporary taking and the con-

demnation results in a double recovery. The facts indicate there was a temporary taking beginning in 1997 that continued until trial. The City responded to Texan's suit for inverse condemnation by asserting a condemnation counterclaim under Section 21.017 of the Property Code. Both parties agree these are two independent causes of action.

For five years, the City restricted access to Texan's property. The restriction was total, but "temporary" in the sense that Lydia Street could have been reopened if the City had chosen to do so. In fact, Texan sought to enjoin the City from continuing its closure of Lydia Street which would likely have been granted if the City had not subsequently filed its condemnation suit. Accordingly, the City's conduct constituted a temporary taking of Texan's property. An appropriate measure of damages for temporary denial of access is "loss of rentals." *City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex.1978). Texan sought loss of rentals as damages for the blocking of Lydia Street. The City does not challenge the award of $79,536.20; moreover, the City also concedes that Texan "may be entitled to some prejudgment interest on the lost rents."

When the City thereafter condemned the property, the taking was permanent. When the taking is permanent,

---

**5.** Subchapter B of Chapter 304 of the Finance Code is expressly limited to wrongful death, personal injury, and property damage cases. TEX. FIN.CODE ANN. § 304.101 (Vernon 2003). Section 304.104, upon which the City relies, is part of Subchapter B, and is, thus, not applicable in condemnation cases.

We recognize that Section 304.201 of the Finance Code makes reference to prejudgment interest in condemnation cases. *See* TEX. FIN.CODE ANN. § 304.201 (Vernon Supp. 2003). However, this provision is in Subchapter C of Chapter 304, and falls outside

the scope of Section 304.104. Moreover, it merely establishes the interest rate and frequency of compounding; it does not provide an accrual date for condemnation cases.

**6.** The decision in *Johnson & Higgins* does not purport to overrule the principle first set out by the supreme court in *Hale* for the accrual of prejudgment interest in condemnation cases. Without additional guidance from the supreme court, we follow *Hale* and its progeny for the reasons set out above.

the normal measure of damages is the land's market value. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001). The three traditional approaches to determining market value are the comparable sales method, the cost method, and the income method. *Religious of the Sacred Heart v. City of Houston,* 836 S.W.2d 606, 615–17 & n. 14 (Tex. 1992). Evidence concerning ten comparable sales was presented to the jury. Texan received a $334,881.28 judgment in the City's condemnation counterclaim.

■ Within the context of a condemnation case, prejudgment interest does not begin to accrue until the condemnor takes possession of the property. *See Housing Authority of El Paso v. Lira,* 282 S.W.2d 746, 749 (Tex.Civ.App.-El Paso 1955, writ ref'd n.r.e.); *Housing Authority of Dallas v. Brown,* 256 S.W.2d 656, 657 (Tex.App.-Dallas 1953, no writ). The condemnor has an election to make; he can either make the requisite deposit and take immediate possession of the property, or he may await the jury's decision and leave the condemnee with possession during the pendency of suit. *State v. Rogers,* 772 S.W.2d 559, 563 (Tex.App.-Amarillo 1989, writ denied). Additionally, any prejudgment interest that would accrue as a result

of the condemnor's possession is tolled by the payment of the deposit. *See* Tex. Prop. Code Ann. § 21.021 (Vernon 1984); *Lin v. Houston Cmty. Coll. Sys.,* 948 S.W.2d 328, 338 (Tex.App.-Amarillo 1997, writ denied). The rationale is that the condemnee may withdraw the deposit and use the money pending the court's determination of damages. *Id.* at 338.

The City argues that it cannot be required to pay prejudgment interest on the statutory condemnation award because it did not physically appropriate Texan's land prior to its condemnation counterclaim. Texan counters by claiming that it is entitled to prejudgment interest by virtue of the City's condemnation counterclaim, noting that the City has not made a deposit or taken other action to stop the accrual of prejudgment interest.

Here, Texan was fully compensated for the temporary taking by the award of $79,536.20 in lost rents from the time the City blocked access until it filed its condemnation suit. Texan was also fully compensated for the permanent taking by the award of $334,881.28 which represents the fair market value of the property at the time of trial.

However, the trial court awarded prejudgment interest on the entire award of $414,417.48 accruing over a period of more than five years. Accordingly, Texan was awarded prejudgment interest on both the lost rentals and the fair market value from

January 27, 1997. This award represents a double recovery.

Texan could have been made whole in several ways. Under the unusual circumstances presented here, a permanent taking was arguably perpetrated on January

27, 1997. If Texan had pursued and prevailed on that theory, it would have been entitled to the fair market value as of January 27, 1997, and prejudgment interest thereon accruing from that date.

Texan, however, sought lost rents for a temporary taking. In which case, Texan was entitled to the lost rents for five years and prejudgment interest on those lost rents as they should or would have become due and payable to Texan. This award fully compensated Texan for the five year period in which it was denied access. Once the City condemned the property, Texan was also entitled to the fair market value of the property at the time of its condemnation, *i.e.,* the filing of the City's condemnation suit, and prejudgment interest thereon accruing from date of condemnation. Texan was not entitled to recover both lost rents for five years and prejudgment interest on the fair market value of the land during that same period.

 The primary objective of awarding damages in civil actions has always been to compensate the injured plaintiff, rather than to punish the defendant. *Cavnar,* 696 S.W.2d at 552. The purpose of prejudgment interest is to compensate a party for the lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *Johnson & Higgins,* 962 S.W.2d at 528. It has long been held that a party is entitled to only one satisfaction for one injury. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991); *Bradshaw v. Baylor Univ.,* 126 Tex. 99, 84 S.W.2d 703, 705 (1935). The "one-satisfaction rule," often utilized in cases with multiple tortfeasors, is also applicable in cases where multiple causes of action arise out of one injury. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184–85 (Tex.1998). Notwithstanding an alternative theory of liability,

a double recovery will result if multiple damage awards are the result of one injury. *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex.1987).

Here, the temporary taking from January 27, 1997 to January 20, 2002, was one injury; the permanent taking on January 21, 2002, was another, and entirely separate, injury. The award of prejudgment interest on the permanent taking accruing from the time of the temporary taking unfairly compensates Texan for an injury already redressed by the damages and prejudgment interest awarded in the inverse condemnation suit for the temporary taking. Texan does not describe an additional injury arising out of the condemnation counterclaim requiring compensation through prejudgment interest. Because there must be some independent basis for an award, Texan is not entitled to prejudgment interest on the condemnation award merely because the City filed a condemnation counterclaim. *See Cavnar,* 696 S.W.2d at 552. Accordingly, the City's third and fourth issues are sustained.

 The City contends in its fifth issue that the trial court improperly conditioned its right to possess the property on the payment of the lost rentals, the condemnation award, and the prejudgment interest on both. A judgment can confer a right to condemn property. *See* TEX. PROP. CODE ANN. § 21.065 (Vernon 2000). However, Article I, Section 17 of the constitution makes payment "a condition precedent to the right to take and use, and title does not vest to [the property] until payment is made." *St. Louis, A. & T. Ry. Co. v. Henderson,* 86 Tex. 307, 24 S.W. 381, 384 (1893). The condemnee is entitled to receive "all damages which the constitution and the law" require to be paid. *Id.* The facts presented here are atypical. Our research has revealed very few condemnation cases that involve a period of tempo-

rary taking followed by a counterclaim in condemnation.

In determining whether the trial court erred in conditioning the City's right to possession on the payment of the entire damage award, we look to the nature of the damages awarded. The damages for the denial of access and the condemnation award both arise out of the constitution's right to "adequate compensation" as they are both "takings." The City argues that its right to possess the property should only be contingent on its payment of the condemnation award and not on the "independent claim" for a temporary taking and prejudgment interest on those damages. However, this argument disregards the fact that the damages for the denial of access and accompanying prejudgment interest are also required as adequate compensation under the constitution. *See e.g., Hale*, 146 S.W.2d at 738; *Texas Coffin Co.*, 472 S.W.2d at 804. Therefore, we find that the trial court did not err in requiring that all constitutional damages be paid before a right to possession would vest in the City. The fifth point of error is overruled.

■■■■■ In its cross-appeal, Texan asserts the trial court erred in denying it attorney fees in conjunction with its declaratory judgment cause of action. A court may award costs and reasonable and necessary attorney fees in a proceeding brought under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). However, the award of attorney fees is discretionary and will be reversed only on a showing of an abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). The trial court abuses its direction if it acts without reference to any guiding rule or principle. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990).

■■■■■ A party may not use Section 37.009 for the sole purpose of obtaining attorney fees. *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253 (Tex.App.-Houston [14th Dist.] 1998, no pet.). More specifically, a party may not use a declaratory judgment action to seek the same relief afforded under another of its causes of action in an effort to obtain otherwise impermissible attorney fees. *Id.* Texan first filed its inverse condemnation suit in September 1998. The declaratory judgment action was not filed until nearly three years later.[7] In its amended petition, Texan asked the trial court to declare the rights and duties of the parties with respect to Lydia Street. However, both the inverse condemnation and the declaratory judgment actions ultimately concern access to the property via Lydia Street. Moreover, it appears the only additional remedy sought by the declaratory judgment action was attorney fees, which are unavailable in an inverse condemnation action. *City of Austin v. Travis County Landfill Co.*, 25 S.W.3d 191, 206–07 (Tex.App.-Austin 2000), *rev'd on other grounds*, 73 S.W.3d 234 (Tex.2002). Accordingly, we find no abuse of discretion, and Texan's cross-appeal is overruled.

Having found error in the trial court's judgment, we reverse that portion of the

7. While Texan claims that it is asking for attorney's fees because the "City's vacillations greatly increased the attorney's fees associated with Texan's successful prosecution of its claims," we find it suspect that the declaratory judgment was filed after the trial court sustained the City's special exception to Texan's attempt to recover attorney's fees in the inverse condemnation action. As explained in the response to the special exceptions, Texan was seeking attorney's fees as exemplary damages for the City's decision not to use its power of condemnation, or in the alternative, Texan feared that it would be entitled to attorney's fees under Section 21.019 of the Property Code because the City could (1) file a condemnation counterclaim or (2) dismiss a filed counterclaim.

judgment awarding prejudgment interest and remand this cause for recalculation of prejudgment interest on the lost rents beginning on January 27, 1997, and prejudgment interest on the fair market value of the property from the date of its condemnation by the City on or about January 21, 2002. The remainder of the trial court's judgment is affirmed.