
E-FILED
CNMI SUPREME COURT
E-filed: Nov 21 2025 10:48AM
Clerk Review: Nov 21 2025 10:48AM
Filing ID: 77836717
Case No.: 2023-SCC-0013-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**XIAODONG TANG,**
*Plaintiff-Appellant,*

*v.*

**XUAN GUO, XUEMIN MASON, AND JOHN DOES 1–5,**
*Defendants-Appellees.*

**Supreme Court No. 2023-SCC-0013-CIV**

---

**SLIP OPINION**

**Cite as: 2025 MP 11**

Decided November 21, 2025

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE PERRY B. INOS
JUSTICE PRO TEMPORE SABRINA S. MCKENNA

———————

Superior Court No. 20-0124-CV
Presiding Judge Roberto C. Naraja, Presiding

———————

CASTRO, CJ.:

¶ 1     This case involves a contract dispute arising from a failed business arrangement. The parties disagree on many operative facts. While they agree that at one point a contract existed between them, the trial court concluded that no valid and enforceable contract existed. Following a bench trial, the court attempted to restore the parties to the position they would be in had no transaction occurred.  We agree with the court's conclusion that no enforceable contract was formed, but the unjust enrichment award for the alleged property repairs lacked evidentiary support and needed to be offset by the rental income. Accordingly, we AFFIRM the trial court in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2     Appellant Xiaodong Tang ("Tang") is a Chinese citizen who owns the leaseholds to nine different properties in the Commonwealth. Appellee Xuemin Mason ("Mason") is a Chinese-born U.S. Citizen with a real estate business license and holds several property leases. Appellee Xuan Guo ("Guo") is Mason's daughter. Tang and Mason likely first met in 2018 and were professionally aware of each other as business people. Mason and Guo are collectively referred to as "Appellees."

¶ 3     Though Tang and Mason dispute the inception of their professional relationship, they agree that in 2019 Tang held the lease for two properties, one referred to as the "Fina Sisu Property", and one referred to as the "PIC Property" (collectively, "the properties"), and that documents were executed purporting to assign Tang's interest in the properties to Guo.

¶ 4     The lease assignments were executed on June 12, 2019, but neither Tang nor Mason signed the documents. Instead, Tang had his father sign on his behalf as his "attorney in fact," and Mason directed Guo sign the lease assignments in Guo's own name. The total purchase price for the two properties was $250,000—$130,000 for one and $120,000 for the other—with initial payments of $15,000 for each. The unpaid balances were due in installments—$115,000 for one property within 3 months of execution (by September 12, 2019) and $105,000 for the other property within 6 months (by December 12, 2019).

¶ 5     At the same time that the lease assignments were executed, the parties also signed "Confirmation of Rescission of Assignment of Lease" documents ("rescission documents"), stating that Guo had failed to pay Tang under the assignment agreement and that the assignment was automatically rescinded. These rescission documents as well as the executed lease assignment documents were filed with the Commonwealth Recorder on June 12, 2019. The documents purporting to rescind and nullify the lease assignment were recorded one minute prior to the recording of the lease assignment documents.

¶ 6     Around the time of execution of the documents, though the record does not establish when, Mason transferred $30,000 to Tang—the purpose of which is disputed. Tang asserts it was a down payment for the leases. Mason maintains it

was a personal loan, and that the lease assignment deal was a cover for a scheme to enable Tang to sell the properties and pay back the loan with the proceeds.

¶ 7 Tang alleges that he intended to sell the leases to Mason, who wanted to flip the properties for a profit. Mason, on the other hand, argues that the lease assignments and recission documents were never intended to reflect the true nature of their agreement. Mason claims that Tang approached her in 2019, urgently requesting a loan of $30,000 and claiming he had a buyer for the leases of the properties. According to Mason, Tang proposed transferring the leases temporarily, for just three days, to Mason's name to aid the sale of the properties, due to there being a warrant for Tang's arrest in China that prevented him from selling the properties under his name. Mason alleges that Tang promised to repay the loan from the proceeds of the sale of the properties. Mason claims she never read the terms of the lease assignment or recission documents, trusting Tang's words that their only purpose was aid in selling the properties. To Mason, Tang sought a temporary transfer to Mason's name to facilitate a sale to a third-party buyer, who ultimately never materialized, so they agreed to each search for a buyer for the properties.

¶ 8 Mason took possession of the properties, allegedly spending $70,000 on repairs to make them more marketable. No buyer emerged and Tang claimed to not have the money to repay Mason. Tang told Mason to rent out the property until he could locate a buyer. Mason was able to do so, renting out both properties for a combined $1,500 a month ($500 for the PIC Property and $1,000 for the Fina Sisu Property).

¶ 9 In December 2019, Tang demanded possession of the properties. Mason agreed to return them on the condition that he pay her the alleged owed amounts. Tang then filed a lawsuit against Appellees, suing for trespass, breach of contract, promissory fraud, and unjust enrichment. Appellees counterclaimed for breach of contract based on the oral contract, and in the alternative, that Tang was unjustly enriched.

¶ 10 In a post-trial motion, Tang moved to strike all testimonies regarding the verbal agreements and negotiations prior to the lease assignments, citing the parol evidence rule prohibited the court from considering facts outside the four corners of the fully integrated lease assignments. The court issued findings of fact and conclusions of law ("FFCL") on September 20, 2023.

¶ 11 The court denied the motion to strike parol evidence concluding the evidence was admissible under the fraud exception. The court found no enforceable contract existed due to lack of mutual assent to be bound. This finding of a lack of mutual assent was based on Mason's testimony that asserted a verbal agreement around the $30,000 loan and that the lease assignment was merely temporary to facilitate the sale to a third party.

¶ 12 The court also found Appellees' counterclaim for breach of contract unenforceable because the terms describing the benefits Mason would receive

from the sale of the properties to a third-party were too vague. The court further denied Tang's request for trespass and ejectment on the basis of unclean hands.

¶ 13    The court awarded Mason $100,000 in unjust enrichment damages, consisting of the alleged $30,000 "loan" and the $70,000 property repair costs. These damages include post-judgment interest running from the date of the FFCL. Finally, the court informed Tang that it would entertain a motion for possession of the properties upon his showing that he could satisfy the judgment.

## II. JURISDICTION

¶ 14    We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art. IV, § 3.

## III. ISSUES ON APPEAL AND STANDARD OF REVIEW

¶ 15    The primary issue on appeal is whether the court erred in finding the lease assignment documents did not constitute a valid and enforceable contract. Whether a contract is valid and enforceable is a mixed question of law and fact, which we review de novo. *Pangelinan v. Itaman*, 4 NMI 114, 117 (1994). However, any extrinsic evidence and related facts the court examined to interpret the contract are reviewed for clear error. *Id*. Assessment of evidence and determinations of witness credibility are questions of fact reviewed for clear error. *Pangelinan v. Pangelinan*, 2024 MP 5 ¶ 58. With regards to witness testimony, "due regard shall be given to the opportunity of the trier of fact to judge the credibility of witnesses." 1 CMC § 3103. When reviewing for clear error, we give high deference to the court, determining only "whether the court could rationally have found as it did, rather than whether we would have ruled differently," overturning only if a review of all the evidence leaves us "with a definite and firm conviction that a mistake was made." *In re Abraczinskas*, 2023 MP 12 ¶ 11 (internal quotations omitted).

¶ 16    Tang's principal argument incorporates two intertwined theories of error. First, he argues that without considering inadmissible parol evidence, the court would not have found that the parties lacked mutual assent to be bound. Second, he asserts that the parol evidence the court considered was not admissible under the fraud exception to the parol evidence rule because Appellees never affirmatively pled fraud under NMI R. CIV P. 8 and 9. A ruling on parol evidence, as well as a decision to raise an affirmative defense sua sponte, are both questions of law subject to de novo review. *Seol v. Saipan Honeymoon Corp.*, 1999 MP 9 ¶ 2; *Sablan v. Elameto*, 2013 MP 7 ¶ 15.

¶ 17    With respect to the damages award, Tang argues that the determination of damages related to the property repairs was not supported in the record and failed to offset the damages with the rental payments she received from the property. Tang also argues that the court erred in ordering post-judgment interest to accrue from the date of the FFCL. A damages award is a finding of fact, and we review the court's findings for clear error. *Tano Grp., Inc.*, *v. Dep't of Pub. Works*, 2009 MP 18 ¶ 29. However, the measure of damages upon which the court based its

factual computation is a question of law, which we review de novo. *Saipan Achugao Resort Members' Ass'n v. Wan Jin Yoon*, 2011 MP 12 ¶ 61.

¶ 18 Lastly, Tang argues that the court erred in failing to return possession of the properties to him. First, he argues that the court improperly applied the doctrine of unclean hands when it denied him relief in the trespass and ejectment claims. Second, he argues that the court erred in failing to return possession of the properties to him even though he holds the undisputed leasehold to the properties. Both of these arguments attack exercises of the court's equitable powers, which we review for abuse of discretion. *Rosario v. Quan*, 3 NMI 269, 281 (1992).

## IV. DISCUSSION

### A. Whether the Court Erred in Finding Fraud When Not Affirmatively Pled

¶ 19 Before addressing whether the court properly concluded that fraud occurred, we must first address whether, as Tang contends, the court improperly relied on an affirmative defense that was never affirmatively pled. *Sablan*, 2013 MP 7 ¶ 16. Tang argues that the court would not have found the lease assignments to be unenforceable if it had not looked outside of the four corners of the documents. He argues that, without an applicable exception, the rule against parol evidence bars consideration of extrinsic evidence, and that the fraud exception cannot be applied here because Appellees never pled the affirmative defense of fraud.

### 1. Whether the Court Erred in Considering Parol Evidence Under the Fraud Exception

¶ 20 Ordinarily, "[t]he parol evidence rule bars 'evidence of prior or contemporaneous agreements or negotiations to change or modify the terms of a binding integrated agreement.'" *Kim v. Baik*, 2016 MP 5 ¶ 23 (*quoting Del Rosario v. Camacho*, 2001 MP 3 ¶ 68). Evidence of an oral contract preceding the written lease assignment would therefore ordinarily be barred from consideration. However, fraud is an exception to this general rule. *Del Rosario v. Camacho*, 2001 MP 3 ¶ 68.

¶ 21 Under NMI R. CIV. P. 8(c)(1), when "responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . fraud[.]" Hence, if an affirmative defense is not included in the pleading, that defense is typically deemed waived. *Sablan*, 2013 MP 7 ¶ 17. But NMI R. CIV. P. 8(c)(2) also states that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as if though it were correctly designated, and may impose terms for doing so."

¶ 22 There is also a general exception to the waiver rule for unpled affirmative defenses when the plaintiff either had notice of the unpled defense or was not prejudiced by the lack of notice. *Sablan*, 2013 MP 7 ¶ 17. Tang argues, however, that the NMI R. CIV. P. 9(b) requirement that fraud be pleaded with particularity precludes this exception in cases involving fraud.

¶ 23    The particularity required by Rule 9(b) pertains to the "circumstances constituting fraud," not the mere allegation of fraud itself. *See Sablan*, 2013 MP 7 ¶ 17 (discussing the applicability of the exception to mistake which is also governed by Rule 9(b)). In *Sablan*, we held that it is insufficient for the circumstances to "naturally give rise" to an unpled affirmative defense. *Id.* ¶ 19. There, the trial judge sua sponte raised the affirmative defense of mistake, even though the term itself was never mentioned during trial. *Id.* ¶ 18. There was no basis of mistake "explicitly or implicitly" so no notice was given to the plaintiff. *Id.* The circumstances alleged must do more than just potentially give rise to a natural inference of fraud; they must implicitly or explicitly describe fraud to give notice. *See id.* Because there was no basis for mistake "explicitly or implicitly" in the record, the plaintiff lacked notice. *Id.* Thus, the circumstances alleged must do more than merely suggest a possible inference of fraud; they must implicitly or explicitly describe fraudulent conduct sufficient to place the opposing party on notice. *See id.*

¶ 24    "Pleadings must be construed so as to do justice." NMI R. CIV. P. 8(e). The language in this rule has been interpreted by other jurisdictions to mean that "a complaint is sufficient . . . if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 854 S.E.2d 870, 882, 884 (W. Va. 2020) (*quoting* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 (3rd Ed. 2020)).

¶ 25    Applying the de novo standard for the court's decision to invoke the fraud exception to the parol evidence, we find no error. The court properly examined the counterclaim for allegations of fraud under NMI R. CIV. P. 8(c)(2). If the counterclaim contained sufficient allegations to put Tang on notice that Appellees were asserting fraud, then the court was correct to consider the parol evidence relating to fraud in its analysis of the contract.

¶ 26    Here, the circumstances alleged in the counterclaim, although labeled a breach of contract, were sufficient to put Tang on notice that Appellees were asserting that he fraudulently induced Mason to lend him $30,000 and to agree to sign the lease assignment. The counterclaim describes a specific fraudulent scheme. He allegedly asked for a loan that would be paid back by a real estate deal he arranged; all he needed was to have Guo sign some documents. The reason he claimed to need Mason's assistance was that his legal issues prevented him from conducting business in his own name. Relying on these promises, Mason extended the loan. The promised buyer did not emerge. When the real estate deal did not materialize, he encouraged further expenditures on the properties to help facilitate a deal by promising that Mason would be compensated for these repairs. Once the repairs were made, he demanded that the properties be returned to him.

¶ 27    These allegations, although presented in the breach of contract counterclaim, describe "circumstances constituting fraud." The circumstances go

beyond mere suspicion or inference of fraudulent conduct. They detail how Tang deceived Mason into giving benefits that she would not have otherwise conferred. Tang was therefore on notice that Mason intended to present evidence of his alleged misrepresentations relating to the loan, the lease assignment, and the property repairs. The court properly construed the counterclaim as asserting circumstances that constituted fraud. The fraud exception applied and the court was correct to consider whether parol evidence supported a finding of fraud.

### 2. Whether the Court Erred in Finding Fraud

¶ 28    As it was permissible for the court to consider fraud, we next address whether it committed clear error by finding fraud which is determined by whether the evidence rationally supports a fraud determination. *See Pangelinan*, 2024 MP 5 ¶ 58; *In re Abraczinskas*, 2023 MP 12 ¶ 11. The lease assignment states:

> [I]f Assignee fails to make any payment to Assignor when due, this Assignment shall be deemed automatically rescinded and the assignment to Assignee under the Assignment shall become null and void, and the Assignor shall have the right to keep all payments made by Assignee. In addition, Assignee has executed a rescission instrument and given it to Assignor, and agrees that *in the event of Assignee's failure to pay when payment is due, Assignor may unilaterally record the rescission instrument to confirm the automatic rescission of the assignment.*
> App. at 495, 518–19 (emphasis added).

¶ 29    The rescission documents also state:

> Assignee has failed to make a payment to Assignor when due. Therefore the Assignment has been automatically rescission [sic], which the parties hereby confirm and Assignee acknowledges that neither Assignee nor anyone claiming through Assignee has any interest in, or any right or claim to, the Lease or the Premises arising out of or related to the Assignment, which is null and void. This Confirmation shall be effective upon its recordation with the Commonwealth Recorder's [sic], Saipan.
> App. at 492, 515.

¶ 30    Under the terms of these documents, recordation of the rescission documents had the automatic legal effect of rescinding the lease assignment, returning ownership of the properties to Tang, and permitting him to keep the payments. The contractual terms only permitted Tang to record the rescission documents if the required payments were not made. *Id.* These payments were not due until September 12, 2019 and December 12, 2019. *Id*.

¶ 31    The rescission documents were recorded on June 12, 2019, the same day that they were executed. *Id*. They were recorded before the assignment they were intended to rescind. Tang argues this renders the recession documents legally meaningless and that they should not be considered at all. The court did not err by rejecting this argument. The simultaneous recording of the documents

supports Mason's claims about the fraudulent nature of the contracts. The court rationally considered this as evidence of fraud.

¶ 32     Additionally, we must give "due regard" to the court's assessment of Tang's and Mason's credibility. 1 CMC § 3103. Having the best opportunity to evaluate credibility firsthand, the court believed Mason's testimony and found it "credibly, consistent, and in great detail" noting that she "never intended to purchase the Properties" and had been led to believe they were not "engaged in a real deal." By contrast, the court found Tang's testimony inconsistent with the physical evidence and to "show[] bad motive." In light of the testimony and the recission documents, the court cannot be said to have been in clear error in finding fraud.

### B. Whether the Unjust Enrichment Damages Were Improperly Awarded

¶ 33     The court entered a judgment of 100,000 for unjust enrichment damages based on: 1) Mason's $30,000 "loan" to Tang; and 2) Mason's claim that she spent $70,000 repairing the properties. To support a claim of unjust enrichment, the claimant must prove: "(1) the defendant was enriched; (2) the enrichment came at the plaintiff's expense; and (3) equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover." *Syed v. Mobil Oil Marianas Islands, Inc.*, 2012 MP 20 ¶ 41 (*citing* the Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)). An award of unjust enrichment damages is an exercise of the court's equitable powers which we review for abuse of discretion. *Pangelinan*, 4 NMI at 117 (1994).

### 1. Whether the $30,000 in Unjust Enrichment Damages from the Loan Were Proper

¶ 34     Tang contends the $30,000 was a down payment for the lease assignment and that the court erred in finding that allowing him to retain the money would be an unjust enrichment. The court found, however, that this money was an "emergency loan" and that Tang represented to Mason that the real estate deal was merely a means to repay the loan. This determination was made based on both of their testimonies and the surrounding documents. The court did not err in determining the lease assignment to be fraudulent and in crediting Mason's characterization of the $30,000 as an "emergency loan." Requiring Tang to repay this money was a proper remedy as Tang cannot retain funds obtained "by his own wrong." Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011). The court's exercise of its equitable powers was proper and not an abuse of discretion.

### 2. Whether the $70,000 in Unjust Enrichment Damages from the Repairs Were Proper

¶ 35     Tang also challenges the $70,000 awarded in unjust enrichment based on repairs made on the properties. As Tang will be receiving the properties back after Mason paid for repairs he asked her to make, allowing him to benefit from those repairs without any compensation would be against "equity and good conscience." *See Syed*, 2012 MP 20 ¶ 41. Some sort of repairs were made on the

properties but the full details as to what these repairs were or how much they cost is not present in the record.

¶ 36    The cost of the repairs are significantly more uncertain that that of the loan. Damages claims must be proven with a reasonable degree of certainty. *See Antonio v. Baek*, 2023 MP 2 ¶ 17; *Tano Grp. Inc.*, 2009 MP 18 ¶ 31; *Bisom v. Commonwealth*, 2002 MP 19 ¶ 22. Though this Court has not affirmed that unjust enrichment damages must meet this standard, other courts have. *See, e.g., Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 971 F.3d 662, 673 (7th Cir. 2020). We now adopt this principle.

¶ 37    Mason provided no receipts or invoices for the repair cost although she did maintain in her testimony that some receipts existed. Tr. 267. The only evidence presented was Mason's trial testimony. She described repairs for the PIC Property, including the tin roof, the walls, windows, doors, water damage, leaking concrete, and lack of power and water. Tr. 265. She further described the damage to the Fina Sisu Property as "even more serious." Tr. 266. Mason admitted, however, that she did not provide any documentation of the costs despite claiming to possess some receipts. On this record, the damages for property repairs cannot be said to have been proven with a reasonable degree of certainty.

¶ 38    Additionally, Mason maintained control of the properties, and has apparently been collecting rent from them. As the contract was invalid, the leasehold interests and their corresponding rent should have remained with Tang. Yet the court did not account for this rental income. Allowing Mason to retain both the rent and compensation for repairs would result in an inequitable double recovery. *See* Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011) (measuring enrichment by the value to the defendant as well as the cost to the claimant). Mason's possession of the properties gave her exclusive access to rental proceeds that would otherwise have belonged to Tang, and those proceeds partially offset the cost of the repairs. This offset must be applied against the unjust-enrichment award.

¶ 39    Appellees' argument that Tang waived this issue by raising it for the first time on appeal lacks merit. Mason testified at trial that she was collecting rent, and Tang's proposed findings of fact and conclusions of law requested to account for that rental income.

¶ 40    Accordingly, additional evidence is necessary to prove with a reasonable degree of specificity, the actual amount expended on repairs. This could be accomplished through whatever receipts Mason still possesses, clearer testimony regarding repairs performed, or evidence of industry-standard repair costs. Any award must be reduced by the rental income Mason has received from properties she never intended to possess. The court must hold additional fact finding to determine with reasonable specificity the actual amount expended and the amount of rental income Mason has derived from the properties.

### C. Whether the Court Erred in Calculating Post-Judgment Interest from the Date Liability Was Determined

¶ 41    Tang argues that the court should not have awarded post-judgment interest from the date of entry of the findings of fact and conclusion of law. He argues that post-judgment interest can only be awarded from the date of entry of judgment. Post-judgment interest is governed by 7 CMC § 4101, which states in relevant part: "Every judgment for the payment of money shall bear interest at the rate of three percent a year from the date it is entered."  This Court's previous ruling on this issue stated:

> *We conclude that the judgment determining liability is the judgment from which interest begins accruing for all components of the judgmen*t, regardless of whether some or all of those components are not quantified at that point. Our reasoning for this is similar to that above; that a plaintiff should be compensated for the loss of the benefit of her money damages prior to their payment. *Once liability is established, a plaintiff's right to damages attaches along with the right to interest on such damages.*
> *NMHC v. Flores*, 2006 MP 23 ¶ 7.

¶ 42    We reaffirm that it is the establishment of liability that triggers the accrual of post-judgment interest. The court's September 20, 2023 "Findings of Fact and Conclusions of Law" established the parties' respective liabilities. Thus, the court did not err by ordering post-judgment interest to be calculated from September 20, 2023.

### D. Whether the Court Erred by Failing to Return Possession of Both Properties

¶ 43    Finally, Tang asserts the court erred by not giving him the equitable remedy of returning possession of the properties.  We review the court's exercise of its equitable powers for abuse of discretion.  *Rosario*, 3 NMI at 281.  He advances two reasons for reversal.

¶ 44     Tang first argues that the court erred by applying the doctrine of unclean hands because, in his view, there was no fraud. As discussed above, the court did not err in finding that Tang engaged in fraud, therefore, the court correctly found Tang acted in bad faith. Courts may decline equitable relief where there is a lack of good faith. *See Manglona v. Baza*, 2012 MP 4 ¶ 41 (finding a person is not entitled to equitable relief when their breach of contract was willful, grossly negligent, or lacked good faith). Because the finding of fraud stands, this argument fails.

¶ 45    Second, Tang asserts that although the court determined he owned the properties, it erred by conditioning their return on his payment of the judgment against him. Under 7 CMC § 4104, the court is permitted as justice requires to dispose of property "in any [] manner known to American common law." Conditioning the return of property on a party's ability to pay a judgment is known to American common law. *See*, *e.g., Rice v. Vaughn*, 193 P. 176, 177 (Kan. 1920) (conditioning plaintiff's recovery of land on defendant's failure to

make a payment on a judgment within a prescribed period); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 392 (Tex. App. 2004) (upholding a trial court's conditioning of a city's taking possession of a condemned property on the city paying the full judgment). The court had the authority to condition the return of the properties on the payment of the judgment. Because both arguments fail, the court did not abuse its discretion in conditioning the properties' return upon his payment of the judgment.

## V. CONCLUSION

¶ 46     For the reasons discussed above, we hold that the trial court did not violate the parol evidence rule or the rules requiring particularity in pleading fraud. We also hold that the unjust enrichment award based on the loan was proper, but award related to the repairs was not reasonably certain and must be recalculated after offsetting any rental income Mason received. We further hold that the trial court did not err in awarding post-judgment interest from the date liability was determined nor in conditioning the return of the properties to Tang on satisfaction of the judgment. Accordingly, we REMAND for further proceedings consistent with this opinion.

SO ORDERED this 21st day of November, 2025.


/s/
ALEXANDRO C. CASTRO
Chief Justice


/s/
PERRY B. INOS
Associate Justice


/s/
SABRINA S. MCKENNA
Justice Pro Tempore


COUNSEL

Colin M. Thompson, Saipan, MP for Appellant.

Mark Scoggins, Saipan, MP for Appellee.


NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, e-mail Supreme.Court@NMIJudiciary.gov.*

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Nov 21 2025 10:48AM
Clerk Review: Nov 21 2025 10:48AM
Filing ID: 77836717
Case No.: 2023-SCC-0013-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**XIAODONG TANG,**
*Plaintiff-Appellant,*

**v.**

**XUAN GUO, XUEMIN MASON, AND JOHN DOES 1-5,**
*Defendants-Appellees.*

---

**Supreme Court No. 2023-SCC-0013-CIV**
Superior Court No. 20-0124

## JUDGMENT

Plaintiff-Appellant Xiaodong Tang ("Tang") appealed the Superior Court's Judgment, granting the defendants $100,000 in damages from Tang with post-judgment interest. For the reasons set forth in the accompanying opinion, the Court AFFIRMS in part, REVERSES in part, and REMANDS for further proceedings.

ENTERED this 21st day of November, 2025.


 /s/
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JUDY T. ALDAN
Clerk of Court